UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**EDDIE WILLIAMS, III**                                 **CIVIL ACTION NO. 23-0823**

**VS.**                                                 **SECTION P**

                                                        **JUDGE TERRY A. DOUGHTY**

**JONATHAN DANIEL**                                     **MAG. JUDGE KAYLA D. MCCLUSKY**

REPORT AND RECOMMENDATION

Plaintiff Eddie Williams, III, who proceeds pro se and in forma pauperis, filed this proceeding on approximately June 16, 2023, under 42 U.S.C. § 1983. He names Officer Jonathan Daniel as defendant.[1] For reasons that follow, the Court should dismiss Plaintiff's claims.

Background

Plaintiff states that on July 13, 2022, at 9:00 p.m., after he drove into his driveway, Officer Jonathan Daniel[2] stopped him, initiating his emergency lights and demanding to see Plaintiff's driver's license. [doc. # 1, p. 7]. Daniel told Plaintiff that he failed to use a turn signal, but Plaintiff maintains that he did use a turn signal. *Id.*

Another officer, DeGraw, arrived. *Id.* Plaintiff states that Officer Daniel threatened to falsely charge him with a crime if he "didn't stop talking to Officer DeGraw." *Id.* Plaintiff continued to talk. [doc. #s 1, p. 7; 5, p. 2].

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

[2] Plaintiff also spelled defendant's surname, 'Daniels,' in his initial pleading. [doc. # 1, p. 7]. Plaintiff later clarified that defendant's name is 'Daniel.' [doc. # 5, p. 1].

Plaintiff alleges that Daniel approached him aggressively and told him that he had a warrant. *Id.* "Defendant then tried to force [Plaintiff's] hands behind [his] back and a struggle" ensued. *Id.* Plaintiff claims that after Daniel "pulled out his X2 taser[,]" Daniel demanded that Plaintiff "turn around to go to jail[,]" but Plaintiff "didn't comply" with the order. [doc. # 5, p. 3]. "That's when the defendant hit [Plaintiff] in [his] right eye with the butt of the taser." *Id.* Plaintiff "stood in the same spot peaceful and calm while voicing his wrong doings." *Id.* Daniel then shot Plaintiff with the taser and reached for Plaintiff's arms again, but Plaintiff pulled his arms away. *Id.* at 3. "Defendant Daniels placed his arm around [Plaintiff's] neck in a choking position and started choking [Plaintiff] while lifting [him] up off the ground." [doc. # 1, p. 7]. Plaintiff writes:

> That's when Defendant Daniels kicked me in my right knee and broke it in several different places. Defendant and Plaintiff fell on the ground and then I placed my hands behind my back once laying on the ground I was tased but prongs didn't go through. My knee was further crushed by Defendant Daniels as I layed on the ground in a handcuffed position Defendant decided to sit in my knee with his full body capacity, weight and armor. [sic].

*Id.* Officer DeGraw requested an EMT. [doc. # 1, p. 8].

Plaintiff maintains that he did not have a weapon, did not pose a threat to anyone, and did not attempt to flee or otherwise evade arrest. [doc. # 5, pp. 2-3]. He claims that Daniel attacked him because he continued to talk and exercise his right to freedom of speech. *Id.* Plaintiff writes, "I just wanted to know why I was being handcuffed . . . ."

Officer DeGraw arrested Plaintiff and charged him with failure to stop at a stop sign, improper turn signal, speeding, resisting an officer, and simple battery. [doc. #s 1, p. 8; 5, pp. 2, 4-5]. The charges are pending. [doc. # 5, p. 5].

Plaintiff claims, "Everything in the police report was a lie and I suffered the consequences such as criminal charges." [doc. # 5, p. 2].

Plaintiff suffered: (1) "a crushed knee with several different broken bones"; (2) a permanent limp and permanent pain in his right leg; (3) a permanent scar on his right eye; and (4) emotional and psychological injuries. [doc. # 1, p. 5].

Plaintiff seeks compensation and punitive damages. [doc. #s 1, p. 5; 5, p. 5].

## Law and Analysis

**1. Preliminary Screening**

Because Plaintiff is proceeding in forma pauperis, his Complaint is subject to screening under § 1915(e)(2). Section 1915(e)(2)(B) provides for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a

reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. *Heck v. Humphrey* and *Wallace v. Kato***

If Plaintiff is convicted of his pending charges, he may not be entitled to seek relief for the claims he raises in this proceeding until any convictions are reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus. A successful civil rights action that would necessarily imply the invalidity of the plaintiff's conviction or sentence must be dismissed unless the plaintiff first shows that the conviction or sentence has been reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus. *Heck v. Humphrey*, 512 U.S. 477 (1994).

While the rule in *Heck* does not extend to pending criminal matters, successful claims under Plaintiff's allegations could necessarily imply the invalidity of any future conviction.[3] *See Wallace v. Kato*, 549 U.S. 384, 393-94 (2007) (finding that the *Heck* rule applies only when there has been a conviction or sentence that has not been invalidated, not to pending criminal charges).

Prevailing on the unlawful stop/detention claim could necessarily imply the invalidity of a future conviction. Such claims are predicated on a lack of reasonable suspicion and necessarily constitute collateral attacks on a conviction if the conviction is founded on evidence derived from the officer's reasonable suspicion and subsequent stop. *See Jackson v. Vannoy*, 49 F.3d 175, 176 (5th Cir. 1995) (applying *Heck* to an unlawful vehicle stop clam); *Wallace v. Kato*, 549 U.S. 384, n.5 (2007) ("[A] Fourth Amendment claim can necessarily imply the invalidity of a conviction . . . .") *Agard v. Sanders*, 2006 WL 2128079, at *3 (N.D. Tex. July 31, 2006) (finding

---

[3] A successful claim will not necessarily imply the invalidity of a conviction "if the factual basis for the conviction is temporally and conceptually distinct from" the claim. *Bush v. Strain*, 513 F.3d 492, 498 (5th Cir. 2008).

that the plaintiff's unlawful traffic stop claim would, if proved, implicate the validity of his guilty plea because the evidence discovered following the stop would be subject to suppression).

Prevailing on the federal and state false arrest claims[4] (under any of Plaintiff's theories)—and establishing that Officer Daniel lacked probable cause to charge Plaintiff—could necessarily imply the invalidity of a conviction because the claims are essentially collateral attacks on a criminal judgment's validity. *Thomas v. Pohlmann*, 681 F. App'x 401, 406 (5th Cir. 2017) (*citing Cormier v. Lafayette City-Par. Consol. Gov't*, 493 Fed. App'x. 578, 583 (5th Cir. 2012)); *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995) ("[The plaintiff's] proof to establish his false arrest claim, i.e., that there was no probable cause to arrest [for the crime he was convicted of], would demonstrate the invalidity of [the conviction].").[5]

Similarly, Plaintiff claims that he was arrested in retaliation for exercising his freedom of speech. Prevailing on this retaliatory-arrest claim could necessarily imply the invalidity of a conviction because a "plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019); *Hartman v. Moore*, 547 U.S. 250 (2006) (Absence of probable cause must be pleaded and proven to support *Bivens* and § 1983 actions against criminal investigators for inducing prosecution in

---

[4] The analysis of a Louisiana law false arrest claim "mirrors that of the federal claim . . . ." *Scott v. City of Mandeville*, 69 F.4th 249, 259 (5th Cir. 2023).

[5] *See also Queen v. Purser*, 109 Fed. App'x. 659 (5th Cir. 2004) (a former inmate's false-arrest claim necessarily challenged whether the evidence, which an officer seized following an allegedly illegal stop, and which led to his subsequent conviction, supplied probable cause for his arrest; thus, the claim was not cognizable absent a showing that the conviction had been invalidated); *Chande v. Moore*, 606 F. App'x 238, 239 (5th Cir. 2015) ("Because a showing that there was no probable cause for the challenged entry, search, seizure, and arrest would call into question the validity of [plaintiff's] resulting conviction for unlawful possession of a controlled substance with intent to deliver in a drug-free zone," the plaintiff's claims were barred by *Heck*); *Goldston v. City of Monroe ex rel. Monroe Police Dep't*, 621 F. App'x 274 (5th Cir. 2015).

retaliation for speech); *Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008) ("Probable cause is an objective standard. If it exists, any argument that the arrestee's speech as opposed to her criminal conduct was the motivation for her arrest must fail, no matter how clearly that speech may be protected by the First Amendment.").

Prevailing on the claim that Daniel falsified a police report could necessarily imply the invalidity of a conviction. In *Paris v. Dallas Police Dep't*, 548 F. App'x 244, 245 (5th Cir. 2013), the Fifth Circuit affirmed that *Heck* barred the plaintiff's claim that officers submitted a false police report. Similarly, in *Shaw v. Harris*, 116 F. App'x 499, 500 (5th Cir. 2004), the Fifth Circuit held that *Heck* barred a plaintiff's claims of evidence tampering, concealment, and perjury because a decision granting the claims "would necessarily imply that her conviction was invalid." In *Lenoir v. Howard*, 579 F. App'x 227, 228 (5th Cir. 2012), the Fifth Circuit held that the plaintiff's "claim that he was wrongly convicted based on constitutional violations at trial, namely the use of perjured testimony, necessarily implies that his conviction was invalid."[6] Here, Plaintiff even claims that he "suffered the consequences such as criminal charges" because "the police report was a lie[.]"

Prevailing on Plaintiff's excessive force claims could necessarily imply the invalidity of a future conviction. As above, Plaintiff was charged with resisting arrest. Plaintiff, however, does not conceptually or temporally distinguish the factual bases of his criminal charge from the bases of his civil claims.[7] Plaintiff does not, for instance, concede that he is guilty of resisting arrest

---

[6] *See Gonzalez v. Garza*, 59 F.3d 1241 (5th Cir. 1995) (holding that claims that evidence was manipulated or withheld to corroborate perjured testimony "would be foreclosed by *Heck*."); *Heath v. Thomas*, 34 F. App'x 962 (5th Cir. 2002) (finding a claim of withholding evidence barred by *Heck*.); *Boyd v. Biggers*, 31 F.3d 279, 283 (5th Cir. 1994) (finding a claim of withholding exculpatory evidence barred by *Heck* because, if proved, it would "call [the plaintiff's] conviction into question under *Brady v. Maryland*, 373 U.S. 83, 83 (1963).").

[7] *See Bush, supra.*

yet claim (i) that the force was excessive beyond what was necessary to secure his arrest or (ii) that the force was excessive because it occurred only before or after he resisted. Plaintiff does appear to concede that at times he did resist arrest, failing to comply with one of Daniel's orders and pulling his arms away. [doc. # 5, p. 3]. However, he also suggests that he did nothing wrong and is not guilty of resisting arrest, maintaining that he did not have a weapon, did not pose a threat to anyone, and did not attempt to flee or otherwise evade arrest. *Id.* at 2-3. To reiterate, he also states that "[e]verything in the police report was a lie . . . ." *Id.* at 2.

If Plaintiff prevails on his excessive force claims—by establishing *inter alia* that any force used was excessive because he was unarmed, did not pose a threat, and did not attempt to flee or evade arrest—the ruling here could necessarily imply that he did not commit the charged crime of resisting arrest. *See Arnold v. Town of Slaughter*, 100 F. App'x 321, 325 (5th Cir. 2004) (finding, where a plaintiff alleged that he did nothing wrong and was viciously attacked for no reason, that the claim was barred because it squarely challenged the factual determination that underlay his conviction for resisting an officer); *Ducksworth v. Rook*, 647 F. App'x 383, 386 (5th Cir. 2016) (finding, where the plaintiff was convicted of resisting arrest, disorderly conduct, and assault on a police officer, that the plaintiff's excessive-force claims were barred under *Heck* because "[h]is complaint present[ed] a single narrative of an unprovoked police attack; his 'broad claims of innocence relate[d] to the entire arrest encounter, and not merely a discrete part of it.'" (*quoting Daigre v. City of Waveland, Miss.*, 549 F. App'x 283, 287 (5th Cir. 2013)).

Successful excessive force claims could imply the invalidity of a future conviction for another reason. Under LA. REV. STAT. § 14:18(7), "The fact that an offender's conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct. This defense of justification can be claimed . . . [w]hen the offender's

8

conduct is in defense of persons or of property under any of the circumstances described in Articles 19 through 22." Under Article 19, "The use of force or violence upon the person of another is justifiable . . . [w]hen committed for the purpose of preventing a forcible offense against the person . . . , provided that the force or violence used must be reasonable and apparently necessary to prevent such offense." LA. REV. STAT. § 14:19(A)(1)(a). Here, for instance, if Plaintiff proved that Daniel used excessive force before Plaintiff used any force or violence in response to Daniel's force, he could essentially prove that his actions (if any) following the excessive force amounted to justifiable self-defense, thus undermining a potential conviction.[8]

The same result obtains to the extent Plaintiff claims that Daniel committed (1) a battery under state law and (2) an assault under state law when Daniel "drew his taser and pointed it directly at" Plaintiff. [doc. # 5, p. 3]. As above, Plaintiff does not conceptually or temporally distinguish the factual bases of his resisting-arrest charge from the bases of his civil claims. In *Price v. City of Bossier*, 841 F. App'x 650, 654 (5th Cir. 2021), for example, the court reasoned:

---

[8] In *Hudson v. Hughes*, 98 F.3d 868, 872 (5th Cir. 1996), the Fifth Circuit held that a Louisiana conviction for battery of an officer—a crime for which justification is an affirmative defense—prevented the plaintiff from suing for excessive force in connection with the incident. The court reasoned that "if the plaintiff proved his excessive force claim, he would essentially be proving that his battery was justified, which would undermine his conviction." *Arnold v. Town of Slaughter*, 100 F. App'x 321, 323 (5th Cir. 2004) (discussing *Hudson*). Similarly, in *Arnold*, 100 F. App'x at 323, the court reasoned: "[C]ertain convictions will prevent a plaintiff from bringing an excessive force claim. For example, we have held that a Texas conviction for aggravated assault on a police officer bars claims for excessive force related to the same conduct. . . . Texas law permits an officer to use any force-even deadly force-to protect against an aggravated assault. *Sappington,* 195 F.3d at 237. Because any force was justified in response to an assault, a finding that the officers used excessive force would necessarily mean that the plaintiff had not committed aggravated assault." *See State v. Ceaser*, 2002-3021 (La. 10/21/03), 859 So. 2d 639 ("An individual in Louisiana has a time-honored right to resist an illegal arrest.").

> Price's amended complaint re-asserts his state law claims against the officers but fails to add any additional factual allegations. These torts—assault, abuse of process, intentional infliction of emotional distress, false arrest, false imprisonment, negligence, gross negligence, and other 'intentional torts'—all stem from Price's arrest. Louisiana applies the *Heck* rationale to state law tort claims. . . . As with the excessive force claim, so these state law claims imply the invalidity of the underlying conviction. Since Price has failed to distinguish these torts from the factual basis for the battery conviction, they are inseparable and *Heck*-barred.

Federal courts should stay civil rights claims that attack the legality of a detainee's arrest, prosecution, and detention until the allegedly improper state prosecution concludes. *See Kato*, 549 U.S. at 393-94. Critically, "If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim *related to* rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court . . . to stay the civil action until the criminal case . . . is ended." *Id.* (emphasis added); *see Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995) (opining that courts *should* stay proceedings "until the pending criminal case has run its course . . . .").

Here, Plaintiff's claims are *related to* rulings that will likely be made concerning his pending charges. Accordingly, the Court should stay these claims pending the outcome of Plaintiff's ongoing criminal prosecution.[9]

### Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Eddie Williams, III's

---

[9] *See Mackey*, 47 F.3d at 746 ("At this point it is simply premature to determine whether or not Mackey's damage claims are barred under *Heck*. . . . The court [should] stay proceedings in the section 1983 case until the pending criminal case has run its course, as until that time it may be difficult to determine the relation, if any, between the two."); *Davis v. Zain*, 79 F.3d 18, 19 (5th Cir. 1996) ("[I]f some presently unforeseen or unarticulated conflict arises between the criminal retrial and the pending § 1983 case, the district court may consider the propriety of a stay . . . .").

claims be **STAYED** under the following conditions:

    a. If Plaintiff intends to proceed with these claims, he must, within thirty (30) days of the date the criminal proceedings against him conclude, file a motion to lift the stay;

    b. If the stay is lifted and the Court finds that Plaintiff's claims would impugn the validity of his conviction, the action will be dismissed under *Heck*; if no such finding is made, the action will proceed absent some other bar to suit;

    c. Plaintiff should not file any more documents concerning these particular claims (other than an objection to this Report and Recommendation if he chooses) in this action until the state court proceedings conclude; and

    d. Defendant shall not be required to answer these claims during the stay, and Plaintiff may not seek a default judgment or conduct any discovery during the stay.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** ***See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 7th day of September, 2023.

                                                              _____
                                                              Kayla Dye McClusky
                                                              United States Magistrate Judge